1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DATATEL SOLUTIONS, INC., a                  No.  2:12-cv-1306-GEB-EFB
     California corporation,
12
                     Plaintiff,
13                                               FINDINGS AND RECOMMENDATIONS

14        v.

15   KEANE TELECOM CONSULTING,
     LLC, a New Jersey limited liability
16   company; OUTREACH TELECOM AND
     ENERGY, LLC, a New Jersey limited
17   liability company; and Does 1 through 10,
     inclusive,
18
                     Defendants.
19

20        This matter came before the court for hearing on August 13, 2014 on plaintiff's motion for

21   entry of a default judgment against defendants Keane Telecom Consulting, LLC and Outreach

22   Telecom and Energy, LLC.[1]  ECF No. 55.  Attorney Stephen Hamilton appeared on behalf of

23   plaintiff; no appearances were made by any defendants.  At the hearing the court ordered further

24   briefing, which has been submitted.  For the reasons stated below, it is recommended that

25   plaintiff's application for default judgment be denied.

26   /////

27   _____

28        [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

                                             1

1    I.        Factual Allegations

2            This is an action for an alleged breach of contract which seeks specific performance and

3    injunctive relief as well as damages.  Plaintiff proceeds on its first amended complaint (hereafter

4    "Am. Compl."), ECF No. 43.  According to the complaint, plaintiff is a California corporation

5    with its principal place of business in Placer County, California.  *Id*. ¶ 4.  Defendant Keane

6    Telecom Consulting, LLC ("KTC") is a New Jersey limited liability company with its former

7    principal business office in Cherry Hill, New Jersey.[2]  *Id*. ¶ 5.  *Id*. ¶¶ 6, 15.  Defendant Outreach

8    Telecom and Energy, LLC ("OTC") is a New Jersey limited liability company with its principal

9    place of business in Egg Harbor Township, New Jersey.  *Id*. ¶ 6.

10           Plaintiff alleges that in June 2004, it and KTC executed a written contract entitled "Sales

11   Subscription Agreement" ("Contract").  The contract granted plaintiff a "subscription to serve as

12   a non-exclusive independent contractor to procure customers for KTC's products and services

13   provided by the telecommunication companies and/or carriers" identified in a schedule to the

14   contract.  *Id*. ¶ 10; *see id*. at Ex. 1 (copy of the contract).  Plaintiff and KTC executed a written

15   amendment to the contract on June 27, 2010.  *Id*. ¶ 11.  The amendment deleted, among other

16   things, the forum selection and arbitration provisions contained in the original contract.  *Id*. ¶ 12.

17   Paragraph 11 of the amendment provided that the contract was to remain unchanged except as

18   modified by the amendment.  *Id*. ¶ 12, Ex. 2.

19           As modified, the contract provides that "[i]n the event KTC discontinues operations and

20   as a result of the discontinuance of operations fails to make payments in accordance with this

21   agreement, ownership of accounts for whom Subscriber[3] has submitted orders, become the

22   property of Subscriber not KTC.  *Id*. ¶ 13.  The contract further provides that if KTC discontinues

23   operations and fails to make payments, "[r]equirements for payment of the Subscription fee

24   become void.  Subscriber may then establish a relationship with any carrier, Master Agent or

25   /////

26

27           [2]   KTC discontinued its operations in fall 2011.

28           [3]   The contract identifies plaintiff as the "Subscriber."  ECF No. 43-1 at 2.

1    other entity, to affect the result of migration of those accounts and payment of applicable

2    commissions for those accounts from KTC to the entity with Subscriber contracts." *Id.* ¶ 14.

3        Plaintiff alleges that KTC discontinued operations in the fall of 2011 and has failed to

4    make payments to plaintiff as required under the contract. *Id.* ¶ 15.  Plaintiff claims that it has

5    performed all of its contractual obligations except those which have been delayed or excused by

6    defendants' failure to perform. *Id.* ¶ 20.  Plaintiff now seeks specific performance by way of an

7    order requiring defendants to surrender and turn over the subject accounts, and to execute any

8    documents necessary to relinquish any claimed interests in the accounts. *Id.* ¶ 21.

9    II.    Procedural History

10       Plaintiff initiated this action on May 14, 2012.  ECF No. 2.  According to the summons

11   returned on July 31, 2012, defendants were served with the summons and complaint on May 18,

12   2012, by certified mail to Peter Keane, the agent for service of process for both defendants.  ECF

13   No. 6 at 3.  On August 1, 2012, plaintiff requested the clerk to enter defendants' default, ECF No.

14   7, which was entered the following day.  ECF Nos. 9, 10.  On October 30, 2012, plaintiff filed a

15   motion for default judgment, and noticed the motion for hearing on December 5, 2012.  ECF. No.

16   19.  The court ordered that hearing continued to January 16, 2013, noting that it could not be

17   determined from plaintiff's filings whether plaintiff had properly served defendants.  *See* ECF

18   No. 24.  Plaintiff was permitted the opportunity to either withdraw its motion or to file a brief

19   demonstrating that service was proper.  *Id.*

20       Defendants subsequently appeared in this action and the court approved the parties'

21   stipulation to withdraw plaintiff's motion for default judgment.  ECF No. 27.  Defendants have

22   since filed an answer and counterclaim.  ECF No. 30.

23       On December 31, 2013, defendants' counsel filed a motion to withdraw as attorney, ECF

24   No. 36, which was problematic in light of the defendants' corporate status.[4]  The motion was

25   denied without prejudice based on counsel's failure to demonstrate that it had explained to its

26   clients that upon the firm's withdrawal, defendants' counterclaim and answer could immediately

27   _____

28       [4] Defendants, both corporations, are required to appear in court through an attorney. *See*
     *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004).

3

be stricken based on their lack of legal representation.  On February 10, 2014, counsel renewed the motion to withdraw and included a copy of a February 4, 2014 written notification to Pete Keane on behalf of the defendant warning the defendant that a potential consequence of the granting of the motion and the failure of the corporation to obtain new counsel is that a default judgment could be entered.  ECF No. 40-3 at 17.  Ultimately, the motion to withdraw was granted.  ECF No. 42.  The order doing so also dismissed the counterclaim in light of the corporation's failure to obtain counsel and its inability to represent itself.  *Id.* at 4.  Further, the order dismissed plaintiff's complaint for failure to allege subject matter jurisdiction.  *Id.*

Plaintiff filed its first amended complaint on March 17, 2014.  ECF No. 43.  Defendants were served with a copy by personal delivery to Pete Keane.  ECF Nos. 44, 45, 46.  Thereafter, plaintiff requested the clerk's entry of defendants' default, which was entered on June 23, 2014.  ECF Nos. 47, 48.

The instant motion for default judgment followed.  As discussed at the hearing and as addressed below, the motion has multiple deficiencies.  Those deficiencies were discussed at the hearing and counsel was instructed to submit a supplemental brief correcting them.  A supplemental brief was filed (ECF No. 64) but it fails to adequately address the concerns raised by the court.  Therefore, the court finds that plaintiff has failed to meet its burden of demonstrating that a default judgment should be entered.

III.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  *See* Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

/////

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied."  *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).  However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

IV.   Discussion

Plaintiff has not adequately addressed the factors set out in *Eitel*, 782 F.2d at 1471-72.

A.   Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

1. Factor 1: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be unable to obtain remedies for defendants' alleged misconduct.

/////

/////

1          2.  Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the

2              Sufficient of the Complaint

3          The merits of plaintiff's substantive claims and the sufficiency of the complaint should be

4   discussed together because of the relatedness of the two inquires.  The court must consider

5   whether the allegations in the complaint are sufficient to state a claim that supports the relief

6   sought.  *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

7          Here, the complaint purports to assert two claims for relief: (1) specific performance of

8   contract and (2) unfair competition under California Business and Professional Code §§ 17200, *et*

9   *seq*.

10                                  a)  Specific Performance

11         Plaintiff's first cause of action is entitled "Specific Performance of Contract."  ECF No.

12  43 at 4-5.  Specific performance is a remedy, not an independent cause of action.  *Inkster v. Fed.*

13  *Home Loan Mortgage Corp.*, CV F 12–1249 LJO MJS, 2012 WL 5933034, at *4 (E.D. Cal. Nov.

14  27, 2012) ("Specific performance is a form of contractual relief, not an independent claim.").  At

15  the hearing on plaintiff's motion, the court clarified for counsel that specific performance is not a

16  cause of action and that while it appears that plaintiff is attempting to allege a claim for breach of

17  contract, the amended complaint is not clear.  Nor does the motion for default judgment explain

18  why the factual allegations of the complaint are adequate to establish such a claim.[5]  Indeed,

19  plaintiff's motion does not even address the elements for a breach of contract claim.  *See* ECF No.

20  56 at 5-7.  Instead, plaintiff only addresses the requirements for obtaining injunctive relief.  *Id.*

21         The court instructed plaintiff to specifically address in a supplemental brief the second and

22  third *Eitel* factors and to clarify the first claim for relief.  Instead, the supplemental brief quarrels

23  with the court's assertion that specific performance is a remedy and not an independent cause of

24  _____

25         [5] The general allegations say that, on information and belief, KTC stopped operating and
    has filed to make payments to plaintiff. ECF No. 43 at 4.  The First Cause of Action, "Specific
26  Performance of Contract," incorporates that allegation.  But it is unclear what contractual
    provision has been breached and why it necessarily follows that the court should now order
27  defendants to "surrender and turn over the subject accounts, and to execute such documents as
    may be necessary . . . to relinquish any claimed interest therein . . . ." *Id.*  Plaintiff may well be
28  entitled to such an order but the briefs in support of the motion do not establish that.

1    action.  Plaintiff insists that it is and has been recognized as such by the California Supreme

2    Court.[6]  Contrary to plaintiff's position, courts have consistently found that under California law

3    specific performance is a remedy and not itself a cause of action.  *See, e.g., Golden West Baseball*

4    *Co. v. City of Anaheim*, 25 Cal.App.4th 11, 49 (1994) (noting that the plaintiff "fail[ed] to

5    recognize specific performance is a *remedy* for breach of contract, a cause of action which

6    requires proof the contract was breached."); *Tamarind Lithography Workshop, Inc. v. Sanders*,

7    143 Cal.App.3d 571, 575 (1983) (deciding the issue of "whether an award of damages is an

8    adequate remedy at law in lieu of specific performance for the breach of an agreement."); *Wong*

9    *v. Jing*, 189 Cal.App.4th 1354, 1360 n.2 (2010) ("Wong also purported to assert a cause of action

10   for 'specific performance/injunctive relief.'  However, specific performance and injunctive relief

11   are equitable remedies and not causes of action for injuries."); *Harara v. ConocoPhillips Co.*, 377

12   F.Supp.2d 779, 796 n.20 (N.D. Cal. 2005) (finding that under California law, "[s]pecific

13   performance is a form of contractual relief, not an independent claim."); *see also* 4 Witkin, *Cal.*

14   *Procedure* (5th ed. 2008) Pleading, §§ 40–41, pp. 105–107.

15        Plaintiff also argues in the supplemental brief, citing to pre-*Iqbal*[7] cases that under the

16   federal rules the complaint need not allege the precise legal theory on which recovery is sought so

17   long as defendants receive fair notice of the nature of the claim.  EFC No. 64 at 3.  Concededly,

18   the complaint could be construed as alleging a breach a contract claim seeking specific

19   performance as a remedy.  However, even with such a construction, plaintiff has the burden on

20   this motion of satisfying the second and third *Eitel* factors as to this claim.  The point being

21   missed by plaintiff is that to obtain such a remedy plaintiff must plead facts which, if true,

22

23        [6] To support this position, plaintiff cites to *Ellis v. Mihelis*, 60 Cal.2d 206, 219-220 (1963)
     and *Behniwal v. Mix*, 147 Cal.App.4th 621, 638 (2007), arguing that these cases demonstrate that
24   "California's high court has allowed actions for specific performance."  ECF No. 64 at 3.  Neither
     case holds that specific performance is a cause of action.  Instead, both cases underscore the point
25   that specific performance is remedy for a cause of action for breach of contract.  They both
     concern the enforcement of a contract for the sale of real property where the seller ultimately
26   reneged on the parties' agreement, or, phrased differently, breached a contract.  *Ellis*, 60 Cal.2d at
     211-212; *Behniwal*, 147 Cal.App.4th at 623.
27

28        [7] *See Ashcroft v. Iqbal*,  556 U.S. 662, 678 (2009).

                                                    7

1    establish the required elements for a breach of contract.  Then, plaintiff must establish that the

2    standards for granting the equitable remedy of specific performance are met.

3            Nor has plaintiff adequately address the court's concerns expressed at the hearing as to the

4    choice-of-law question.  The contract at issue, which is attached to the amended complaint,

5    contains a provision that: "This Agreement was accepted in the State of New Jersey and shall be

6    interpreted and construed under the laws thereof, which laws shall prevail in the event of any

7    conflict of laws, except to the extent governed by the United States Trademark Act of 1946

8    (Lanham Act, 15 U.S.C.A. §§ 1051 et seq.)."  ECF No. 43-1 at 10.  The court noted at the hearing

9    that plaintiff's application for default judgment made no mention of this provision, failed to brief

10   the choice-of-law question and only addressed case law pertaining to specific performance under

11   California law.  Because the question had not been briefed, the court specifically directed plaintiff

12   to address this provision in a supplemental brief.

13           Rather than providing a comprehensive choice-of-law analysis as to this case, the

14   supplemental brief simply argues that the choice of law provision within the contract is

15   unenforceable because defendants failed to demonstrate that it is enforceable.  According to

16   plaintiff, "[s]ince California places the burden on the proponent of a choice of law provision and

17   since Defendants have not and cannot meet this burden under California's choice of law

18   framework (because they have failed to appear), this Court must not apply New Jersey law to the

19   claims asserted by Plaintiff."  ECF No. 64 at 2.  This curious argument in no way assists the court

20   in addressing the second and third *Eitel* factors that must be considered and weighed in

21   determining whether to grant the request for entry of a default judgment.

22           Furthermore, it appears that the choice-of-law provision must be applied here.  A federal

23   court sitting in diversity applies the rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec.*

24   *Mfg. Co.*, 313 U.S. 487, 796 (1941).  In California, "a freely and voluntarily agreed-upon choice

25   of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to

26   the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'"

27   /////

28   /////

1   *1–800–Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513–14 (2010) (quoting *Trust One*

2   *Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal.App.4th 1302, 1308 (2005)).  There is "a

3   strong policy in favor enforcing such provisions" *Id*. at 513.

4          "[I]f the proponent of the clause demonstrates that the chosen state has a substantial

5   relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the

6   choice of law, the parties' choice generally will be enforced *unless the other side can establish*

7   both that the chosen law is contrary to a fundamental policy of California and that California has

8   a materially greater interest in the determination of the particular issue." *Id*. at 514 (emphasis in

9   original).

10          Although defendants have not appeared in this action, and therefore have not presented

11   evidence that (1) New Jersey has a substantial relationship to the parties or the transaction, or (2)

12   that there is a reasonable basis for enforcing the choice-of-law provision, plaintiff's allegations in

13   the complaint, which the court accepts as true following the clerk's entry of default, demonstrate

14   that defendants' principal places of business are in New Jersey.  ECF No. 43 at 2; *see, e.g.,*

15   *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all

16   allegations in a well-pleaded complaint are taken as true after the court clerk enters default

17   judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip*

18   *Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

19          Accepting the truth of plaintiff's own allegations, New Jersey has a substantial interest in

20   the parties to this suit.  *See Application Group, Inc. v. Hunter Group, Inc.* 61 Cal.App.4th 881,

21   899 (1998) ("[T]he mere fact that one of the parties resides in the chosen state provides a

22   'reasonable basis' for the parties' choice of law."); Restatement (Second) of Conflict of Laws §

23   187 cmt f (recognizing that a substantial relationship exists "where one of the parties is domiciled

24   or has his principal place of business.").  Plaintiff, however, has not shown that the chosen law is

25   contrary to a fundamental policy of California, nor has it demonstrated that California has a

26   materially greater interest in the determination of the instant dispute.  Accordingly, on the current

27   record, the contract's choice of law provision does appear to be enforceable and New Jersey law

28   would apply.  Plaintiff's motion for default judgment does not address the merits of a breach of

9

1    contract claim under New Jersey (or California) law nor explain why under that law specific

2    performance is an appropriate remedy on these facts.  Accordingly, on the current record it has

3    not been shown that the second and third *Eitel* factors weigh in favor of a default judgment.

4          Plaintiff supplemental brief, states "[t]o the extent the Court disagrees with the conclusion

5    that Defendants have not and cannot meet their burden to enforce a choice of law provision,

6    Plaintiff requests the opportunity for further briefing to analyze the conflict and governmental

7    interest of the state of California . . . ."  ECF No. 64 at 2 n.1.  That opportunity was presented

8    when plaintiff was instructed to address the question in a supplemental brief.  But plaintiff's

9    supplemental brief is also inadequate to support entry of a judgment and the motion will now be

10   denied.  If plaintiff wishes to conduct further research and file an appropriately briefed motion,

11   plaintiff shall do so in accordance with the Local Rule 230.  Any brief in support of a new motion

12   shall fully address the *Eitel* factors and specifically point out what factual allegations of the

13   complaint—which, if taken as true--are sufficient to demonstrate entitlement to the relief sought

14   under the applicable substantive law.

15         In this regard, plaintiff's failure to expressly assert a breach of contract claim upon which

16   a remedy of specific performance may be predicated is particularly problematic.[8]  In conclusory

17   fashion, the complaint asserts that in the event KTC discontinues operation and fails to make

18   payments in accordance with the agreement, the accounts for whom plaintiff submitted orders

19   become plaintiff's property.  ECF No. 43 ¶ 14.  Thus, plaintiff asserts that KTC discontinued

20   operations and as a result failed to make payment required under the contract.  *Id*. ¶ 15.  Plaintiff

21   concludes from this that KTC has withheld commissions owed and therefore plaintiff is now

22   entitled to ownership of the accounts described in the contact.  But plaintiff does not provide any

23   allegation demonstrating that defendants deprived plaintiff of its ownership interests of the

24   accounts.  Assuming that plaintiff acquired ownership of the accounts, neither the complaint nor

25

26         [8]  A breach of contract claim under either California law and New Jersey requires a
     plaintiff to allege (1) existence of a contract; (2) plaintiff's performance; (3) defendant's breach;
27   and (4) damages to plaintiff as a result of defendant's breach.  *See CDF Firefighters v.
     Maldonado*, 158 Cal.App.4th 1226, 1239 (2008); *Nat'l Reprographics, Inc. v. Storm*, 621 F.
28   Supp. 2d 204, 222 (D.N.J. 2008).

1    any declaration or other evidence in support of the motion for entry of a default judgment

2    explains what the defendants have done (or failed to do) that is interfering with plaintiff's

3    ownership rights.  While the court may take as true well pleaded factual allegations of the

4    complaint (except for those allegations relating to damages), *TeleVideo Systems, Inc.,* 826 F.2d at

5    917-18,  it cannot assume as true allegations that are not there.  *Cripps v. Life Ins. Co. of N. Am.*,

6    980 F.2d at 1267, citing *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, at 1391 (9th

7    Cir. 1988) ("facts which are not established by the pleadings of the prevailing party, or claims

8    which are not well-pleaded, are not binding and cannot support the judgment." ).

9          Plaintiff has failed to satisfy its burden of showing either by evidence or by specific facts

10   alleged in the complaint that it is entitled to relief on this claim.

11                    b)         Unfair Competition Under Cal. Bus. & Prof. §§ 17200

12         Plaintiff's second cause of action alleges a violation of California Business and

13   Professions Code section 17200.  ECF No. 43 at 5-6.  Plaintiff alleges that defendants have

14   misused multiple companies to transfer valuable assets for the purpose of evading creditors, such

15   as plaintiff, and/or to escape the consequences of breaching their contractual obligations.  *Id.*

16   ¶ 23.

17         Plaintiff's failure to properly assess the choice-of-law provision contained in the contract

18   is problematic for this unfair competition claim as well.  "[A] valid "choice-of-law clause, which

19   provides that a specific body of law 'governs' the 'agreement' between the parties, encompasses

20   all causes of action arising from or related to that agreement, regardless of how they are

21   characterized, including tortious breaches of duties emanating from the agreement or the legal

22   relationship it creates."  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 470 (1992).

23         Here, plaintiff's second claim is based on California law and, as explained above, New

24   Jersey law appears to govern this dispute.  If New Jersey law governs, plaintiff cannot properly

25   bring his California law claim against defendants.  *See It's Just Lunch Intern. LLC v. Island Park*

26   *Enterprise Group, Inc*., 2008 WL 4683637, at * 6 (dismissing claim brought under Cal. Bus. &

27   Prof. Code § 17200 where Nevada law governed pursuant to contract's choice of law provision).

28   /////

1          4.  Sum of Money at Stake

2          Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at

3  stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at

4  1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal.

5  2003).

6          Without elaboration, plaintiff asserts that this factor weighs in favor of entry of a default

7  judgment because the amount of damages accrued to date is approximately $330,000 and is

8  contemplated by the contract.  ECF No. 56 at 7.  The allegedly accrued amount to date, $330,000

9  is itself a significant sum.  But plaintiff also alleges in the amended complaint that its "presently

10  vested contractual entitlements are worth well over $1 million."  ECF No. 43 ¶ 15.  Plaintiff's

11  motion for default judgment also requests $1 million for general and consequential damages.

12  ECF No. 56 at 9.  Thus, there is a significant amount of money at stake, and this factor does not

13  weigh in favor of entering default judgment.

14          5.  Possibility of a Dispute Concerning the Material Facts

15          In considering the possibility of a dispute concerning material facts, the court may assume

16  the truth of the well-pleaded facts in plaintiffs' complaint following the clerk's entry of default

17  and, thus, there generally is a very low likelihood that any genuine issue of material fact exists.

18  *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005)

19  ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters

20  default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord

21  Philip Morris USA, Inc., 219 F.R.D. at 500*; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  As discussed

22  above, plaintiff's allegations could be construed as asserting a breach of contract claim.  Plaintiff

23  also alleges that defendants have misused multiple companies to hide assets to protect defendants

24  from the consequences of breaching their contractual obligations.  ECF No. 43 ¶¶ 23, 24.

25  Accepting plaintiff's allegations as true, there is low likelihood of a genuine issue of material fact.

26  Thus, this factor favors granting the motion.

27  /////

28  /////

12

6. Whether the Default Was Due to Excusable Neglect

The sixth factor also weighs in plaintiff's favor as the record demonstrates that defendants' default was not due to excusable neglect. Defendants previously appeared in this action and filed an answer to the original complaint. EFC No. 30. Furthermore, defendants were admonished by their former counsel that if the firm withdrew their answer and counterclaim could be immediately stricken and default entered against them. *See* ECF No. 42 at 3. Although the court granted counsel's motion to withdraw in March 2014, there is no indication that defendants have obtained alternative counsel or otherwise attempted to defend against plaintiff's claims. Furthermore, plaintiff served defendant a copy of the first amended complaint. ECF No. 44-46. Thus, the record strongly suggests that defendants' default was intentional.

7. Policy Favoring Decisions on the Merits

Finally, the seventh *Eitel* factor weighs against granting a default judgment. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. *Eitel*, 782 F.2d at 1472. District courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see Craigslist, Inc. v. Naturemarket*, Inc., 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan.11, 2010); *Hartung v. J.D. Byrider*, *Inc*., 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009).

The merits of plaintiff's substantive claim, the sufficiency of the claim, the amount of money at stake, and the strong policy for a decision on the merits all weigh against plaintiff's motion. Upon balancing the *Eitel* factors, the court finds that plaintiff failed to satisfy its burden of demonstrating that it is entitled to default judgment. Accordingly, it is recommended that plaintiff's motion be denied.

B.     Damages

Plaintiff motion also fails to adequately address its request for damages. Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established

13

1   by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261,  267 (9th Cir. 1992) (citing

2   *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Huynh*, 503

3   F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded

4   or to admit conclusions of law" (citation and quotation marks omitted)); *Abney v. Alameida*, 334

5   F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally

6   insufficient claim."). Thus, a party's default conclusively establishes that party's liability on

7   sufficiently-pleaded claims, but does not establish the amount of damages. *Geddes*, 559 F.2d at

8   560; s*ee also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir.1990); *Doe v. Rafael*

9   *Saravia*, 348 F. Supp. 2d 1112, 1143 (E.D. Cal. 2004). To obtain a default judgment against a

10  defendant for a claim for uncertain damages, the plaintiff must prove the amount of damages he

11  seeks. *Shanghai Automation Instrument Co., Ltd. v. KUEI*, 194 F. Supp. 2d 995, 1010 (N.D. Cal.

12  2001).

13          In addition to its request for specific performance, plaintiff requests money damages in the

14  sum of $330,494.92, plus $1 million for general and consequential damages.  ECF No. 56 at 9.  In

15  support of its motion, plaintiff submitted the declaration of Daniel Langton.  ECF No. 58.  Mr.

16  Langton declares that "KTC discontinued operation in or about the fall of last year (presumably

17  he intended to say the fall of 2011) and as a result has failed to make payments to Plaintiff as

18  required by the Contract.  KTC has withheld from Plaintiff, without justification or excuse, fully

19  vested commissions that are due and payable to Plaintiff.  The unpaid commissions are

20  summarized as follows, which now total over $330,494.92."  He then identifies the amount KTC

21  owes to plaintiff for each month for commissions earned beginning in December 2011 through

22  August 2012.  *Id*. ¶ 9(a).

23          He further states that KTC owes plaintiff approximately $10,000 per month for September

24  2012 through June 2014, for a total of $220,000.  *Id*.  Mr. Langton provides the following

25  explanation for why $10,000 is owed for these months:

26          The commissions earned by Datatel are all based on monthly
        recurring revenue for the life of the each [sic] customer and are
27      generally very stable and predictable.  In fact, Datatel has been
        receiving commissions from some of its original customers from
28      over ten years ago when Datatel first started.  The average monthly

14

commissions Keane paid out to Datatel between December 2011 and August 2012 was $11,516.43 per month. The majority of the contracts sold are based on three year contracts with the underlying carriers and our experience has shown that the probability of each contract renewing is over ninety percent. Since we are not able to get the exact amounts owed after Keane's refusal to send monthly accounting statements from September 2012 onwards, we have estimated a reasonable discount based on the actual historical commissions paid out to estimate an average payout of $10,000 per month for the unknown months between September 2012 and June 2014.

*Id.* ¶ 9(b).

Mr. Langton's declaration, while submitted under penalty of perjury, is not supported by any evidence. The only exhibits submitted with the declaration are a copy of the contract and the amendment to the contract. ECF Nos. 52-1, 52-2. Aside from Mr. Langton's declaration, plaintiff provided no evidence in support its claim for damages.

At the hearing on its motion, the court notified plaintiff that it had failed to adequately support its request for damages. Accordingly, plaintiff was also informed to address this issue in its supplemental brief. Plaintiff submitted with its supplemental brief the Supplemental Declaration of Daniel Langton (ECF No. 65), which according to plaintiff "provides additional evidence for the unpaid commissions in the amount of $103,647.92 between December 2011 and August 2012." ECF No. 64 at 5. Attached to the declaration "are true and correct copies of electronic spreadsheets for the months detailed above, which provides details of the earned commissions" for December 2011 through August 2012." ECF No. 65 at 2.

The attached spreadsheets appear to support plaintiff's claim that KTC owes plaintiff unpaid commissions in the amount of $103,647.92. However, even if the court were to conclude that KTC owes plaintiff an average of $10,000 per month for commissions earned from September 2012 through June 2014, a finding the court need not make at this juncture, it is not clear how plaintiff arrived at the $330,494.92 figure it believes it is owed (22 x $10,000 + $103,647.92 = $323,647.92). Furthermore, plaintiff also requests both in the complaint and in its motion for default judgment $1 million in general and consequential damages, but completely fails to address this request for relief in any of its pleadings.

/////

15

1    Lastly, plaintiff's seeks damages against both defendants.  As far as the court can discern,

2  plaintiff's damages are based on plaintiff's contention that KTC failed to perform as promised

3  under the contract.  Plaintiff does not allege that OTE was a party to the contract or explain how

4  any alleged breach by KTC would translate into liability for OTE.

5    Thus, while plaintiff submitted some evidence to support its request for relief, the motion

6  fails to support the claim for damages.

7  V.    Conclusion

8    For the reasons stated above, plaintiff has failed to demonstrate that it is entitled to default

9  judgment.  As explained at the August 13 hearing, a carefully drafted and properly supported

10  motion may well cure the problems that infect the instant motion.  Accordingly, it is

11  RECOMMENDED that plaintiff's application for default judgment, ECF No. 55, be denied

12  without prejudice.

13    These findings and recommendations are submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

18  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

19  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

20  DATED:  January 30, 2015.

21

22    EDMUND F. BRENNAN
      UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28

16