UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATATEL SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>KEANE TELECOM CONSULTING, LLC, a New Jersey limited liability company; OUTREACH TELECOM AND ENERGY, LLC, a New Jersey limited liability company; and Does 1 through 10, inclusive,<br><br>Defendants. | No. 2:12-cv-1306-TLN-EFB<br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the court for hearing on plaintiff's renewed motion for default judgment against defendants Keane Telecom Consulting, LLC ("KTC") and Outreach Telecom and Energy, LLC ("OTE").[1] ECF No. 73. Attorney Stephen Hamilton appeared on behalf of plaintiff; no appearances were made by defendants. For the reasons stated below, it is recommended that plaintiff's application for default judgment be granted.

/////

/////

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

I.      Factual Allegations

Plaintiff filed this breach of contract action against defendants, seeking specific performance and injunctive relief as well as damages. The action proceeds on plaintiff's first amended complaint. Am. Compl., ECF No. 43. According to the amended complaint, plaintiff is a California corporation with its principal place of business in Placer County, California. *Id*. ¶ 4. Defendant Keane Telecom Consulting, LLC ("KTC") is a New Jersey limited liability company with its former principal business office in Cherry Hill, New Jersey.[2] *Id*. ¶ 5. KTC discontinued its operations in fall 2011. *Id*. ¶¶ 6, 15. Defendant Outreach Telecom and Energy, LLC ("OTC") is a New Jersey limited liability company with its principal place of business in Egg Harbor Township, New Jersey. *Id*. ¶ 6. Plaintiff claims that OTC claims certain rights or interests in a contract that is at issue in this case, or in underlying accounts which allegedly now belong to plaintiff pursuant to the contract, such that OTC is a necessary party to this action. *Id*.

Plaintiff alleges that in June 2004, it executed a written contract with KTC, entitled "Sales Subscription Agreement" ("Contract"). Pursuant to this contract, KTC granted plaintiff a "subscription to serve as a non-exclusive independent contractor to procure customers for KTC's products and services provided by the telecommunication companies and/or carries" identified in a schedule to the contract. *Id*. ¶ 10; *see id*. at Ex. 1 (copy of the contract). On June 27, 2010, plaintiff and KTC executed a written amendment to the contact. *Id*. ¶ 11. The amendment deleted, among other things, the forum selection and arbitration provisions contained in the original contract. *Id*. ¶ 12. However, paragraph 11 of the amendment provided that the contract was to remain unchanged except as modified by the amendment. *Id*. ¶ 12, Ex. 2.

The contract, as modified, provides that "[i]n the event KTC discontinues operations and as a result of the discontinuance of operations fails to make payments in accordance with this agreement, ownership of accounts for whom Subscriber[3] has submitted orders, become the property of Subscriber not KTC." *Id*. ¶ 13. The contract further provides that if KTC

---

[2]  KTC discontinued its operations in fall 2011. ECF No. 43 ¶ 15.

[3]  The contract identifies plaintiff as the "Subscriber." ECF No. 43-1 at 2.

2

discontinues operations and fails to make payments, "[r]equirements for payment of the Subscription fee become void. Subscriber may then establish a relationship with any carrier, Master Agent or other entity, to affect the result of migration of those accounts and payment of applicable commissions for those accounts from KTC to the entity with Subscriber contracts." *Id.* ¶ 14.

Plaintiff alleges that KTC discontinued operations in the fall of 2011 and as a result has failed to make payments to plaintiff as required under the contract. *Id.* ¶ 15. Plaintiff claims that it has performed all obligations required of it under the Contract, except those which have been delayed or excused by defendants' failure to perform. *Id.* ¶ 20. Plaintiff seeks specific performance under the contract, requiring defendants to surrender and turn over the subject accounts, and to execute any documents necessary to relinquish any claimed interests in the accounts. *Id.* ¶ 21.

II.     Procedural History

Plaintiff initiated this action on May 14, 2012. ECF No. 2. On July 31, 2012, plaintiff filed a summons returned executed, which indicated that defendants were served on May 18, 2012 by certified mail by mailing a copy of the summons and complaint to Peter Keane, the agent for service of process for both defendants. ECF No. 6 at 3. On August 1, 2012, plaintiff requested the clerk to enter defendants' default, ECF No. 7, which was entered the following day. ECF Nos. 9, 10. On October 30, 2012, plaintiff filed a motion for default judgment, and noticed the motion for hearing on December 5, 2012. ECF No. 19.

The court observed in its November 28, 2012 order that it could not be discerned from plaintiff's filings whether plaintiff had properly served defendants and ordered the hearing on the motion for default judgment continued to January 16, 2013. ECF No. 24. Specifically, it was not demonstrated whether service was proper under California Civil Procedure Code section 415.40 because plaintiff failed to provide evidence that Peter Keane was defendants' registered agent for service of process. Nor was it demonstrated that the address at which service was attempted, an address in Florida, was the proper address for service. Although plaintiff had proffered evidence demonstrating that someone acknowledged receipt of the summons and complaint, it was not

clear who signed the receipts of service. *See id*. at 3. Accordingly, the hearing was continued to either allow plaintiff to withdraw its motion or to file a brief demonstrating that service was proper under California law. *Id*.

Defendants subsequently appeared in this action, and on December 5, 2012, the court approved the parties' stipulation to withdraw plaintiff's motion for default judgment. ECF No. 27. On March 5, 2013, defendants filed an answer and counterclaim. ECF No. 30. However, on December 31, 2013, defendants' counsel filed a motion to withdraw as attorney. ECF No. 36. That motion was denied without prejudice based on counsel's failure to demonstrate that it had explained to its clients that upon the firm's withdrawal, defendants' counterclaim and answer could immediately be stricken based on their lack of legal representation.[4] Counsel subsequently renewed the motion to withdraw and specifically informed the court that defendants had been advised of the potential consequences should the motion be granted. ECF No. 40. With that representation, the court granted the motion to withdraw. ECF No. 42. That order also dismissed the complaint for failure to allege subject matter jurisdiction. *Id*. It also dismissed the defendant corporations' counterclaim as they were no longer appearing through counsel. *Id*.

On March 17, 2014, plaintiff filed its first amended complaint, ECF No. 43, serving a copy by personally delivery to Pete Keane. ECF Nos. 44, 45, 46. Thereafter, plaintiff requested a clerk's entry of defendants' default, which was entered on June 23, 2014. ECF Nos. 47, 48.

Plaintiff subsequently filed a motion for default judgment, which was heard on August 13, 2014. ECF No. 55. However, as the court previously noted, that motion failed to establish plaintiff's entitlement to default judgment and was therefore denied without prejudice. Plaintiff has renewed the motion and addressed the deficiencies identified by the court. ECF No. 73. As explained below, plaintiff has now satisfied its burden of showing that it is entitled to default judgment against defendants.

/////

/////

---

[4] Defendants, both corporations, are required to appear in court through an attorney. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004).

### III.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

/////

/////

IV.  Discussion

    A.    Appropriateness of the Entry of Default Judgment Under the Eitel Factors

        1. Factor 1: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be unable to obtain remedies for defendants' alleged misconduct.

        2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficient of the Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint should be discussed together because of the relatedness of the two inquires. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

Here, plaintiff only seeks default judgment on its "specific performance of contract" claim.[5] ECF No. 75 at 10. Although the claim is styled as "specific performance," a contractual remedy and not an independent cause of action, plaintiff states in its motion that "the allegations underlying it clearly allege that [sic] both a claim for breach of contract and entitlement to the remedy of specific performance." ECF No. 75 at 10. Despite the mislabeled title of the cause of action, plaintiff intends to assert a breach of contract claim.

The contract at issue, which is appended to the amended complaint, contains the following choice-of-law provision: "This Agreement was accepted in the State of New Jersey and shall be interpreted and construed under the laws thereof, which laws shall prevail in the event of any conflict of laws, except to the extent governed by the United States Trademark Act of 1946

---

[5] The complaint also alleges an unfair competition claim under California Business and Professional Code §§ 17200, et seq. ECF No. 43 at 5-6. Plaintiff seeks default judgment only on its breach of contract claim and requests dismissal of its unfair competition claim. ECF No. 74 at 6. The court recommends that plaintiff's request for voluntary dismissal of the latter claim be granted.

1  (Lanham Act, 15 U.S.C.A. §§ 1051 et seq.)." ECF No. 43-1 at 10. As noted by plaintiff, there is
2  no conflict in law as the elements for a breach of contract claim are the same under California and
3  New Jersey law. Under the laws of both states, to assert a cause of action for breach of contract a
4  plaintiff must demonstrate: (1) the existence of a contract; (2) plaintiff's performance; (3)
5  defendant's breach of the contract; and (4) damages flowing from the breach. *CDF Firefighters*
6  *v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008); *Nat'l Reprographics, Inc. v. Storm*, 621 F.
7  Supp. 2d 204, 222 (D. N.J. 2008).

8        The complaint alleges that the parties entered into a written contract in June 2004. ECF
9  No. 43 ¶ 10. The contract provided that "[i]n the event KTC discontinues operations and as a
10 result of the discontinuance of operations fails to make payments in accordance with this
11 agreement, ownership of accounts for whom Subscriber has submitted orders, becomes the
12 property of Subscriber not KTC." *Id*. ¶ 13. The contract provides that plaintiff was required to
13 pay monthly subscription fees in the amount of $590. ECF No. 43-1 at 2. Plaintiff alleges that it
14 performed all obligations required of it under the contract, except those which have been delayed
15 or excused based on defendants' failure to perform. ECF No. 43 ¶ 20. Plaintiff further alleges
16 that KTC has failed to pay plaintiff the amount due under the contract, *id*. ¶ 17, and as a result
17 plaintiff has suffered financial injury, *id*. ¶ 25. These allegations are sufficient to allege a claim
18 for breach of contract under both California law and New Jersey law against KTC.

19       As for OTE, the amended complaint alleges that "OTC claims certain rights or interests in
20 the contract in suit—or in the underlying accounts which now belong to Plaintiff—such that OTE
21 is a necessary party to this action, or otherwise appropriately joined in order to effectuate the
22 remedy of specific performance and/or injunctive relief sought by Plaintiff herein." *Id*. ¶ 6.
23 Although this vague allegation fails to explain the relationship between OTE and KTC, plaintiff
24 argues that "the liability of OTE is made indelibly clear by Defendants' own admissions in their
25 pleadings. In Defendants' answer and counterclaim, they allege that KTC is a wholly-owned
26 subsidiary of OTE and that 'OTE acquired 100% of the membership interest in KTC in May 2010
27 /////
28 /////

with KTC becoming a wholly-owned subsidiary of OTE.'" ECF No. 74 at 18 (quoting ECF No. 30 ¶ 26). Accordingly, the allegations in the complaint, when read in conjunction with OTE's own admissions, are sufficient to establish a breach of contract claim against OTE.

Plaintiff further argues that it is entitled to specific performance based on defendants' breach. Under California law, "[s]pecific performance of a contract may be decreed whenever: (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate." *Union Oil Co. of Cal. v. Greka Energy Corp.*, 165 Cal. App. 4th 129, 134 (2008) (citing *Tamarind Lithography Workshop, Inc. V. Sanders*, 143 Cal. App. 3d 571, 575 (1983)). "Under New Jersey law, the 'right to the equitable remedy of specific performance turns upon the existence of an adequate remedy at law; and the adequacy of the legal remedy of compensation depends upon the facts and circumstances of the particular case." *Cherry Hill Partners Village Place, L.L.C. v. Wachovia Bank, N.A.*, 2011 WL 2610171, at *7 (D. N.J. June 30, 2011) (quoting *Fleischer v. James Drug Stores, Inc*., 1 N.J. 138, 146 (1948); *see also Kacirek v. Clifford*, 2005 WL 3098929, *3 (N.J. Super. Ct. Ch. Div. Nov. 18, 2005) ("Generally, specific performance is invoked only when the remedy at law is inadequate.").

As discussed above, the contract contains sufficiently definite terms identifying the parties' obligations. Further, the contract specifically states that:

> In the event that KTC discontinues operations and as a result of the discontinuance of operations fails to make payment in accordance with this agreement, ownership of accounts for whom Subscriber has submitted orders, become the property of Subscriber not KTC. Requirements for payment of the Subscription fee become void. Subscriber may then establish a relationship with any carrier, Master Agent or other entity, to affect the result of migration of those accounts and payment of applicable commissioners for those accounts from KTC to the entity with whom Subscriber contract.

ECF No. 43-1 at 3 (paragraph C.1). Thus, the terms of the contract provide for the relief plaintiff currently seeks in the event KTC fails to make payments to plaintiff due to it discontinuing operations.

/////

Plaintiff further argues that damages alone would not provide an adequate remedy. As explained by plaintiff, "[d]efendants have refused to provide plaintiff with accounting statements and information since August 2012, making it impossible to know exactly how much Plaintiff is owed and how much Plaintiff, in turn, owes its subagents on the subject accounts. Without access to the carrier statements and ownership of the accounts as per the Contract, Plaintiff is unable to reconcile the accounts and continually loses both money and credibility every month." ECF No. 74 at 9. In support of its motion for default judgment, plaintiff submitted the declaration of Daniel Langton, the President and CEO of Datatel Solutions, Inc. ECF No. 76. Mr. Langton declares that the "customer accounts are unique property and exclusive to our sub-agents, to whom we remain obligated to pay commissions for the subject accounts." *Id*. ¶ 14. He further explains that "[w]ithout access to the carrier statements and ownership of the accounts . . . we are unable to reconcile the accounts and continually lose both money and credibility every month. When these accounts are properly transferred, we will be able to reconcile the past years commissions with our subagents and confirm how much is due and owing." *Id*. Thus, without specifically giving plaintiff's ownership of the accounts, plaintiff cannot resolve its liability with subcontractors. Thus, damages alone are not an adequate remedy.

Accordingly, the court finds that plaintiff has sufficiently alleged a claim for breach of contract against defendants and adequately established its entitlement to specific performance.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Plaintiff seeks $393,647.92 in damages for past commissions, plus specific performance requiring defendants to convey ownership of the accounts to plaintiff. Given the large amount of money at stake, this factor does not weigh in favor of granting default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default. *See, e.g., Elektra Entm't Group Inc. v. Crawford*,

226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Accepting as true the allegations in the complaint, which are supported by the evidence submitted by plaintiff, the likelihood of a dispute is minimal. Accordingly, this factor weighs in favor of granting plaintiff's motion.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

The record reflects that defendants' default was not due to excusable neglect. Defendants clearly had notice of the instant action. They retained counsel, appeared in this action, and filed an answer and counterclaim. ECF No. 30. Defendants eventually ceased communicating with their counsel, which resulted in the court granting counsel's motion to withdraw as attorney. ECF No. 42. After counsel withdrew, plaintiff filed a first amended complaint. The record reflects that plaintiff served KTC, OTE, and Outreach Technology, LLC, as Successor in Interest to OTE, by personally delivering a copy of the Pete Keane. ECF Nos. 44, 45, 46. Defendants, however, failed to respond to the amended complaint. Defendants were also served a copy of the instant motion for default judgment, and again failed to respond. ECF No. 78. Simply put, there is no indication that defendants' default was due to excusable neglect. Instead, the record supports the findings that defendants made a conscious decision to not litigate this action, and the court so finds.

### 6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, this factor should not preclude entry of default judgment.

/////

Upon weighing the factors articulated in *Eitel*, the court finds that plaintiff is entitled to default judgment on its breach of contract claim. The only remaining issue is plaintiff's entitlement to damages.

B.     Damages

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted)); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D.Cal.2004) ("[A] default judgment may not be entered on a legally insufficient claim."). Thus, a party's default conclusively establishes that party's liability on sufficiently-pleaded claims, but does not establish the amount of damages. *Geddes*, 559 F.2d at 560; *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990); *Doe v. Rafael Saravia*, 348 F. Supp. 2d 1112, 1143 (E.D. Cal. 2004). To obtain a default judgment against a defendant for a claim for uncertain damages, the plaintiff must prove the amount of damages he seeks. *Shanghai Automation Instrument Co., Ltd. v. KUEI*, 194 F. Supp. 2d 995, 1010 (N.D. Cal. 2001).

Plaintiff's motion seeks $393,647.92 in damages. ECF No. 43. In his declaration, Mr. Langdon declares that KTC discontinued its operations in August 2012 and as a result failed to make payments under the contract. ECF No. 76 ¶ 9. He further states KTC failed to make payments for commissions earned between December 2011 and August 2012 and that commission earned during this time totaled $103,647.92. *Id.* ¶ 10, Ex. 5 (spreadsheets showing

/////

commissions earned). This evidence sufficiently demonstrates plaintiff's entitlement to $103,647.92 for unpaid commissions during the months of December 2011 through August 2012.

Plaintiff also seeks damages in the amount of $10,000 a month for commissions earned from November 2012 through February 2015, the month the contract concluded, for a total of $290,000. *Id.* ¶ 12. Mr. Langdon explains that after August 2012, defendants denied plaintiff access to commission information, and therefore plaintiff is unable to ascertain the precise amount it was entitled to receive for commissions earned after this month. *Id.* ¶ 11. He further states that $10,000 a month for commissions earned between September 2012 and February 2015 is a conservative estimate based on stable account activity from the prior two years. *Id.* ¶ 12. Mr. Langton's declaration indicates that between March 2010 and October 2012 (the month plaintiff received payment for commissioned earned in August 2012), payments from KTC exceeded $10,000 each month except during June 2010, August 2010, and October 2012.[6] *See id.* Plaintiff's evidence demonstrates that the average monthly commission payment received between March 2010 and October 2012 was $12,056.75. *Id.* ¶¶ 10-12, Exs. 5-6. This evidences supports plaintiff's contention that it would have received at least an average of $10,000 in commissions for the months of September 2012 through February 2015 (31 months) had defendants not breached the contract.[7] Accordingly, the court finds that plaintiff is entitled to $310,000 in damages for commissions earned from September 2012 through February 2015.

Based on the forgoing, the court finds that plaintiff damages total $413,647.92.

/////

/////

/////

---

[6] The payments for June 2010, August 2010, and October 2012 were $5,243.33, $8,132.99, and $9,141.82, respectively.

[7] Although plaintiff states that it seeks $290,000 for commissions for September 2012 through February 2015, this figure appears to be based on a mathematical error. Plaintiff erroneously states that the time between September 2012 through February 2015 is only 29 months. It appears that in reaching this figure plaintiff failed to include the first and last month (September 2012 and February 2015, respectively), which would bring the total months to 31.

12

V. <u>Conclusion</u>

Accordingly, it is hereby RECOMMENED that:

1. Plaintiff's application for default judgment (ECF No. 73) be granted; and

2. The court enter judgment against defendants Keane Telecom Consulting, LLC and Outreach Telecom and Energy, LLC in the amount of $413,647.92.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE